HEATER, Plaintiff, *v.* BOSTON & MONTANA CORPORA-
TION et al., Defendants; NEW ENGLAND TRUST
CO., Cross-complainant.
MERRILL et al., Appellants, *v.* BRAND, Receiver, et al.,
Respondents.

(No. 6,408.)

(Submitted February 19, 1929. Decided April 20, 1929.)

[277 Pac. 11.]

Mr. *Joseph Wiggin*, of the Bar of Boston, Massachusetts, *Mr. N. A. Rotering* and *Mr. A. C. McDaniel*, for Appellants, submitted an original and a reply brief; *Mr. Rotering* argued the cause orally.

*Messrs. Gunn, Rasch, Hall & Gunn*, for Respondents, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an attempted appeal from an order of the district court sustaining respondents' demurrer to a petition filed in this action and dismissing the petition. At the outset, the respondents contend that the appeal should be dismissed as the order is not appealable, and that therefore this court is without jurisdiction.

From the allegations of the petition which was filed May 15, 1928, it appears that on May 13, 1923, the appellants regularly foreclosed their mechanics' liens against the Boston & Montana Milling & Power Company et al. in the district court of Beaverhead county, wherein neither the Metropolitan Trust Company, trustee, nor its successor, New England Trust Company, trustee, as mortgagee of the real and personal property of the Boston & Montana Milling & Power Company, was made a party, judgment being regularly entered on April 6, 1923, in favor of appellants for the sum of $40,355.37 and for foreclosure of their liens. On December 3, 1924, a judgment and decree of mortgage foreclosure was regularly entered in the above-entitled action in favor of the cross-complainant, New England Trust Company, trustee, wherein the petitioners were made parties defendant and appeared by demurrer, which was by stipulation withdrawn. Such mortgage foreclosure judgment provides that the property shall be sold subject "to valid prior and existing liens on said property or other rights or interests therein which may be adjudged to be prior to the lien of said mortgagee, if any, and particularly subject to each and every of the terms and conditions of those certain stipulations and agreements filed herein on the date of the entry of this decree, and which are hereby made a part hereof." The stipulation entered into between the petitioners and the cross-complainant has been certified by the trial court as a part of the record, from which it appears that the New England Trust Company, cross-complainant in the action, at the time the decree was entered, stipulated with the petitioners under designation of "the credi-

tor," that "the proceedings heretofore commenced by it in said cause to foreclose a certain Mortgage or Deed of Trust given by Boston-Montana Corporation defendant, which said mortgage is dated March 1, 1922, are in aid of the consummation of a certain Plan and Agreement for the reorganization of Boston-Montana Corporation and allied companies, dated May 31, 1924, and that so long as it, the said cross-complainant, is proceeding in said cause under said Plan, it will not apply for, or cause to be entered, any decree of foreclosure upon said cross-complaint unless such decree shall order and decree the sale of the property covered by said mortgage, subject to the rights of the Creditor, if any, in and to the premises covered by said mortgage, provided, however, that if said reorganization plan shall be abandoned as provided in said plan, said The New England Trust Company shall be wholly free to proceed with said foreclosure in any manner it may deem advisable and without regard to the rights of the Creditor thereunder, and shall be free to apply for or cause to be entered, any decree which the court shall deem proper to enter, and the Creditor shall be free to file such pleadings as he may deem necessary and as the Court shall allow and both parties shall be restored to their present status in said proceedings, and this stipulation shall, in the event of such abandonment of said plan be void and of no effect whatever."

Under the mortgage foreclosure decree, the property had been sold, but, on the application of the receiver, on April 24, 1928, the special master was ordered to conduct a resale of the property, and to accept no bid less than $125,000 for the benefit of creditors. The petitioners proceeded upon the theory that the mortgage antedated the mechanic's lien, and therefore sought only to subject the buildings on the property to the payment of their demands in preference to the rights of the mortgagee.

It is averred by the petitioners that by virtue of the contracts entered into between them and the Boston & Montana

Milling & Power Company, and the furnishing of materials, work and labor, and the judgment duly entered foreclosing their liens, this court in equity and good conscience should enter its order and decree authorizing the petitioners under the judgment and decree heretofore entered in their favor on the foreclosure of their mechanics' liens to cause the building and structures to be sold by the sheriff as in the decree provided, and out of the proceeds arising from the sale thereof to pay the petitioners the amount due them under such decree, and that, in the event that the premises shall be sold by the special master herein, he be ordered and directed out of the proceeds coming into his possession and arising out of a resale of the premises, to pay the petitioners the amount due them under the aforementioned judgment in their favor, or if the proceeds are insufficient to pay the same, that the court make and enter herein such order as that out of the funds provided for the reorganization of the Boston & Montana Milling & Power Company, and allied companies, and by the re-adjustment committee, procured for the purpose of paying off existing preferred claims, liens, and encumbrances upon the property, the amount of the judgment heretofore entered in favor of the petitioners be paid to them.

The prayer of the petition asks relief, in substance, the same as stated in the allegations of the petition last mentioned.

The property does not appear to have been sold under the mechanic's lien foreclosure judgment. However, the petitioners now seek to have their rights protected in the present action, more than five years after the entry of such judgment in their favor, and more than three years and five months after the decree of mortgage foreclosure was entered in the present action. It does not appear when the mortgage foreclosure action was begun, nor when the cross-complaint of the New England Trust Company was filed herein; however, the decree of foreclosure of the mortgage was not entered until December 3, 1924, more than eighteen months after judgment had been entered in the petitioners' favor upon fore-

closure of their mechanics' liens. It does not appear whether there has been a resale of the property by the master in this action, as by the court ordered. Although the petitioners were made parties to the present action and appeared therein, they permitted judgment of foreclosure of the mortgage and sale of the property to be ordered under a decree entered making express reference to the terms of the stipulation; in fact the judgment entered, from its recitals, appears upon its face to be interlocutory in consequence of the stipulation filed.

Generally an appeal merely from an order sustaining a demurrer cannot be entertained. (*Pentz* v. *Corscadden*, 49 Mont. 581, 144 Pac. 157.) However, the appellants undoubtedly proceed upon the theory that the order entered in this proceeding is a "special order made after final judgment." So far as pertinent for consideration here, a judgment or order in a civil action, except when expressly made final, may be reviewed on appeal by the supreme court (sec. 9729, Rev. Codes 1921) from (1) "a final judgment entered in an action or special proceedings; * * * (2) from an order granting a new trial; * * * (3) from any special order made after final judgment" (Id., sec. 9731), "*and not otherwise*" (Id., sec. 9729). It is manifest that the order sustaining the demurrer to the petition is not a "special order after final judgment," as the judgment entered is not *final*. This being so, the appeal must be dismissed. The right of appeal is purely statutory; it did not exist at common law, and, unless the judgment appealed from falls fairly within the classification made by the law, the appeal will not lie. (*Ringling* v. *Biering*, 83 Mont. 391, 272 Pac. 688, and cases there cited.)

A final judgment is "the final determination of the rights of the parties in an action or proceeding" (sec. 9313, Rev. Codes 1921), and consequently a decree which leaves matters yet undetermined is necessarily interlocutory. "When the cause is completely adjudicated a final decree should be ren-

dered, not one which is apparently interlocutory." (21 C. J., p. 644.)

No hard-and-fast definition of a final judgment can be given, since the finality of a judgment depends to great extent upon its apparent purpose, and whether it contains provision for subsequent modification. "Inasmuch as the judgment and its enforcement is the end and aim of the whole litigation, to satisfy this purpose it must so dispose of the matters at issue between the parties that they and such other persons as may be affected, will be able to determine with reasonable certainty the extent to which their rights and obligations have been determined. While no very definite test of certainty can be laid down, obviously a judgment must be sufficiently certain to be susceptible of enforcement in the manner provided by law. It must be in such form that the clerk is enabled to issue an execution upon it, which an officer will be able to execute. A test sometimes applied is that it must be so certain and definite that it may be pleaded or otherwise relied upon in subsequent proceedings as an estoppel or bar with respect to the matters adjudicated." (Freeman on Judgments, 5th ed., sec. 72.)

In the case of *Ringling* v. *Biering,* supra, it was by this court said: "Whether a judgment is final or not is sometimes difficult of determination. 'In drawing the distinction between final and interlocutory adjudications, the greatest difficulty has been experienced in the case of decrees in equity; the confusion arising principally from the peculiar nature of the decisions, and the wide range of means which chancery possesses both for informing the mind of the judge and for acting upon the parties concerned.' (Black on Judgments, 2d ed., sec. 41; *Arnold* v. *Sinclair,* 11 Mont. 556, 28 Am. St. Rep. 489, 29 Pac. 340.) However, 'these definitions, or rather descriptions of a final decree, agree in the main idea, which is: That to be final, the decree must dispose of the merits of the whole cause, or completely and finally dispose of some branch or part of the cause which is separate and distinct from the

other parts of the case.' (*Evans* v. *Dunn & Witt*, 26 Ohio St. 439.) In order to be final, the decree must dispose of the cause, or a distinct and definite branch thereof, reserving no further questions or directions for future determination. It must not merely decide that one of the parties is entitled to relief of a final character, but must give that relief by its own force, or be enforceable for that purpose, without further action by the court, or by process of contempt. (*Bondurant* v. *Apperson*, 4 Met. (Ky.) 30.) The rule deducible from the authorities is that a judgment will never be considered as final unless the party in whose favor it is rendered obtains benefit therefrom without the necessity of further proceedings in the action." "A decree cannot be in part final and in part interlocutory in the same cause, for and against the same parties who remain in court." (21 C. J., p. 644.)

Applying these settled rules to the case now under consideration, it is manifest that the judgment entered herein is interlocutory rather than final. Such being the case, the appeal herein cannot be considered, since the order from which the attempted appeal is made is not a "special order after ▮ final judgment." Interlocutory decrees are not mentioned in our Code of Civil Procedure, and whether they are ever warranted by reason of the inherent powers of a court of equity without regard to the statute, is a question not presented and as to which we reserve opinion. However, the decree before us is not even properly to be considered in the category of an interlocutory judgment. If anything, it is a conditional interlocutory determination. It is like "the shell game," now you see it, and now you do not. The rights of the parties are left in the realm of uncertainty and speculation. It is specifically recited and declared to have been entered "particularly subject to each and every of the terms and conditions of those certain stipulations and agreements filed herein on the date of the entry of this decree, and which are hereby made a part hereof."

Referring to the stipulation made a part of the so-called decree, we find that the parties are to be restored to their status on the date of the stipulation, and the same is to be considered "void and of no effect whatever," unless, etc. The so-called decree is not only unique, but in our opinion is a monstrosity. In process of attempted high financing, the court has been imposed upon, and we think it our duty to straighten out the entanglement, so far as possible, in fairness to all concerned. The parties should, under the circumstances, be held to the terms of their stipulation upon which the alleged decree is predicated; accordingly, the entire decree should now be disregarded and held for naught, leaving the parties affected in the very status they were on the date the stipulation was entered into. Under the conditions presented, this is the only sensible course to be pursued in order to obtain a judgment finally establishing the priorities of the parties in this action. Therefore, it satisfactorily appearing that no final judgment has yet been entered in the action, the appeal must of necessity be, and the same is hereby, dismissed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, FORD and ANGSTMAN concur.

ON PETITION FOR REHEARING.

MR. JUSTICE GALEN delivered the opinion of the court.

Learned counsel for respondents urge that we have overlooked the fact that the mortgage foreclosed by the judgment, copy of which is made a part of the record, is not the mortgage described in the petition, the lien of which the claimants by their petition sought to have declared inferior and subject to their mechanics' liens; that the property involved is not the same, and the alleged property owner a wholly different corporation.

In the opinion rendered herein, it was stated that, at the time the decree was entered, the cross-complainant, New Eng-

land Trust Company, stipulated with the appellants that the proceedings heretofore commenced in this cause "to foreclose a certain mortgage or deed of trust given by Boston-Montana Corporation, defendant, which said mortgage is dated March 1, 1922, are in aid of the consummation of a certain plan and agreement for the reorganization of Boston-Montana Corporation, and allied companies." By the terms of the stipulation, as well as the provisions of the decree, the mortgage sought to be foreclosed in this action is the mortgage of the defendant Boston-Montana Corporation, covering mining property described, dated March 1, 1922, executed in favor of the New England Trust Company, for $5,000,000. However, in the appellants' petition filed in this action, they make reference to a mortgage dated the first day of December, 1919, executed by the Boston & Montana Milling & Power Company, for the principal sum of $500,000, to the Metropolitan Trust Company, as trustee, covering all of the property involved in this action, and in addition, "the Keith Lee and Anna Lee quartz lode mining claims." Then referring especially to this action, the petitioners allege that a judgment of foreclosure "in the above-entitled action was entered herein, whereby the said property and premises were decreed to be sold, and the same were thereafter in due course sold, subject to the provisions of said decree to which reference is hereby made, and the same is made a part hereof."

As before noted, the decree in this action makes specific reference to the stipulation filed, as a consequence of which the judgment of foreclosure was entered pursuant to the terms of the stipulation. The decree orders the property to be sold "subject to valid prior and existing liens on said property, or other rights or interests therein which may be adjudged prior to the lien of the mortgage, if any, and particularly subject to each and every of those certain stipulations and agreements filed herein on this date of the entry of this decree and which are made a part hereof"; and "for the purpose of enforcing the provisions of this decree, and for the purpose of matters reserved by the decree, the term of this

court is hereby extended and jurisdiction of the cause is hereby retained." Clearly the decree entered gives express recognition of the stipulation and refers thereto as a part thereof. In consequence, upon reference to the terms of the stipulation as a part of the decree, it is found the parties to this action are to be restored to their status as of the date of the stipulation, which is likewise the date of the decree, and the stipulation is to be considered "void and of no effect whatever," under conditions stated.

Accordingly it is manifest that the trial court, upon a trial of the action, will have to make determination, from the evidence adduced, of the parties and property actually involved and the priorities of the parties to the action. A rehearing is denied.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, FORD and ANGSTMAN concur.